IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

INTERNATIONAL STAR REGISTRY )
OF ILLINOIS, )
 )
              Plaintiff, )
 )
  v. )  No. 06 C 625
 )
ABC RADIO NETWORK, INC., )
 )
              Defendant. )

MEMORANDUM OPINION AND ORDER

In this diversity action ABC Radio Network, Inc. ("ABC Radio") has moved under Fed. R. Civ. P. ("Rules") 9(b) and 12(b)(6) to dismiss Counts II, III and IV of the First Amended Complaint ("Complaint") brought against it by International Star Registry of Illinois, Ltd. ("Star Registry").[1] ABC Radio has also moved to dismiss Complaint Count I as well as Counts II, III and V as assertedly barred by limitations to the extent that the events at issue occurred before February 2, 2001. For the reasons set out in this memorandum opinion and order, ABC Radio's motion is granted in its entirety.

---

[1] Star Registry's counsel has inexplicably ignored this Court's May 18, 2006 memorandum order, which called attention to the inconsistency between the name in the Complaint's case caption and the allegation in Complaint ¶3--indeed, each was defective in jurisdictional terms--and which ordered that flaw to be cured by May 30. If no curative filing is made on or before September 25, 2006 this Court will be constrained to dismiss this action for lack of subject matter jurisdiction.

### Star Registry's Claim[2]

Star Registry creates and sells "personalized certificates which allow purchasers to name a star" (Complaint ¶8). From 1984 to 2004 it contracted orally with ABC Radio for on-air radio advertisements of its star-naming business (id. ¶12). When doing so it "dealt primarily with a single ABC Radio representative-- Kevin Lally" (id. ¶28). It began to suspect in December 2004 that ABC Radio had failed to run its advertisements as often as agreed upon under the parties' contract (id. ¶17). So in January 2005 Star Registry asked ABC Radio to provide information as to the number of times it aired Star Registry's advertisements during the December 2004 campaign (id. ¶20). ABC Radio responded by providing information that was "both inadequate and intended to mislead" (id. ¶19).

Star Registry next asked that ABC Radio provide it with "Radar postings": independent reports that could provide detailed information about the frequency with which ABC Radio ran Star Registry's advertisements (Complaint ¶20). When ABC Radio provided those reports, Star Registry believed that they demonstrated that ABC Radio had failed to deliver the agreed-upon quantity of advertising for the time period surrounding major

---

[2] Because of the nature of ABC Radio's motions, this opinion necessarily accepts Star Registry's allegations as true. What follows, then, need not repeat such qualifying language as "Star Registry claims" or the like--without, of course, this Court making or implying any factual findings.

holidays during 2004: Christmas, Mother's Day and Father's Day (id. ¶25). That in turn has led Star Registry to conclude that ABC Radio has failed to deliver the correct quantity of advertising throughout the duration of their 20-year relationship (id.).

Despite the fact that Rule 10(b)'s final sentence does not contemplate the use of separate counts to assert a single claim, Star Registry's counsel have followed the widespread practice of splintering its claim by advancing five different theories of recovery in as many counts: breach of an oral contract (Count I), fraudulent inducement of Star Registry to renew its contract year after year for over 20 years (Count II), fraudulent concealment of ABC Radio's breach of contract (Count III), violation of the Illinois Uniform Deceptive Trade Practices Act ("Act")(Count IV) and tortious interference with Star Registry's business relations (Count V). Because this Court has subject matter jurisdiction based on diversity of citizenship, Illinois law (including its choice of law rules) provides the rules of decision--and the parties agree that means the application of Illinois substantive law (see M.T. Bonk Co. v. Milton Bradley Co., 945 F.2d 1404, 1407 (7th Cir. 1991)).

### Standards for a Motion To Dismiss

Under Rule 12(b)(6) all well-pleaded allegations in the Complaint must be credited, with all reasonable inferences drawn

3

in favor of Star Registry (Jackson v. E.J. Brach Corp., 165 F.3d 971, 977-78 (7th Cir. 1999)). This Court must then inquire "whether there is any possible interpretation of the complaint under which it could state a claim" (Jets, Inc. v. Shell Oil Co., 381 F.3d 627, 629 (7th Cir. 2004)).

As already indicated, "[o]ne set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate" (NAACP v. Am. Family Mut. Ins., 978 F.2d 287, 292 (7th Cir. 1992)). NAACP, id. teaches that "[i]dentifying legal theories may assist defendants and the court in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of 'claim for relief' in the federal rules." Where as here a plaintiff utilizes separate counts to set out different legal theories, that does not multiply the number of claims for relief--it merely does more than the Rules require: "limn the grievance and demand relief" (id.). Nonetheless this opinion will follow Star Registry's pleading pattern for analytical purposes.

## Breach of Contract

ABC Radio does not dispute that Star Registry has met the liberal pleading standards of Rule 8(a) in its contention that ABC Radio breached the parties' oral contract.[3] It does,

---

[3] In fact, ABC Radio affirmatively states at page 1 of its Memorandum of Law in Support of Its Motion To Dismiss the First Amended Complaint that Star Registry "should be left only with

4

however, contend that Star Registry's potential recovery should be limited by the five-year statute of limitations imposed on oral contracts by Illinois law (735 ILCS 5/13-205). In that respect "a cause of action accrues, and the statute of limitations begins to run, when the party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused" (LeBlang Motors, Ltd. v. Subaru of Am., Inc., 148 F.3d 680, 690 (7th Cir. 1998)(internal quotation marks omitted)). Illinois courts have held that when the statute of limitations begins to run is usually (though not always) a question of fact for the jury (id. at 690 n.6). As to that question, the Illinois discovery rule provides that a breach of contract claim accrues when plaintiff knew or should have known that defendant breached the contract (see Commonwealth Ins. Co. v. Stone Container Corp., 323 F.3d 507, 512 (7th Cir. 2003)).

Here Star Registry asserts that it may avoid the five-year statute of limitations based on the doctrine of fraudulent concealment. For that purpose "the burden is on the plaintiff to prove that the claim has been filed within the limitations period" (Weger v. Shell Oil Co., 966 F.2d 216, 218 (7th Cir. 1992)(per curiam)). Thus Star Registry is bound by the statutory five-year limitation unless it establishes fraudulent concealment

---

its breach of oral contract claim." This opinion will hereafter cite to that Memorandum as "A. Mem. --" and to Star Registry's responsive Memorandum as "S. Mem. --."

(see Jackson v. Rockford Hous. Auth., 213 F.3d 389, 394 (7th Cir. 2000)).

In Illinois fraudulent concealment is governed by statute (735 ILCS 5/13-215):

> If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.

Specific acts or representations by the defendant must have been "calculated to lull or induce [plaintiff] into delaying filing [its] claim or to prevent [it] from discovering [its] claim" (Barratt v. Goldberg, 296 Ill.App.3d 252, 257, 694 N.E.2d 604, 608 (1st Dist. 1998)).

For Star Registry to invoke the fraudulent concealment statute, it must show that ABC Radio took "active steps" such as "hiding evidence or promising not to plead the statute of limitations"(Shanoff v. Ill. Dep't of Human Servs., 258 F.3d 696, 702 (7th Cir. 2001)). And fraudulent concealment is inapplicable "when the plaintiff retained the ability, notwithstanding the defendant's delay or resistance, to obtain information necessary to pursue his claim" (id.).[4]

---

[4] Although Shanoff and the cases that it cites, and that are quoted in part in the language quoted above in the text, have dealt with the fraudulent concealment doctrine in the context of federal-question claims, the substantive principles that those cases apply are identical to those expressed in the Illinois caselaw.

6

In this instance Star Registry's allegations do not support the proposition either that ABC Radio took active steps to conceal the alleged fraud or that Star Registry lacked the ability to obtain the information about the frequency of its advertisements. Instead Star Registry alleges only that ABC Radio sales representative Kevin Lally ("Lally") consistently affirmed that Star Registry's advertising aired with the frequency dictated by the contract terms. And of course those statements did not prevent Star Registry from requesting reports that detailed the frequency with which its advertisements were actually aired--after all, it requested and obtained the very same reports in advance of filing this action (see Pratt v. Sears Roebuck & Co., 71 Ill.App.3d 825, 829, 390 N.E.2d 471, 475 (1st Dist. 1979)).

During the course of the parties' 20 year relationship, Star Registry was never prevented from verifying that ABC Radio was performing its duties under the contract. Illinois' discovery statute does not "extend a limitation period when with ordinary diligence the plaintiff might have discovered, within the limitation period, that the cause of action existed," (Leffler v. Engler, Zoghlin & Mann, Ltd., 157 Ill.App.3d 718, 721, 510 N.E.2d 1018, 1020 (1st Dist. 1987)). Star Registry's failure to evaluate and monitor ABC Radio's performance for all the years that it could readily have done so, but did not, equates to a

total absence of the ordinary diligence required to extend a limitations period. This Court therefore declines to extend the limitations beyond the five-year span allowed for breach of oral contract claims.

## Fraudulent Conduct

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." That requirement has three main purposes: "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party" (Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 777 (7th Cir. 1994)). As Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990) has said--and as the caselaw since then has consistently reconfirmed:

> To meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.

Because allegations of fraud may seriously harm a business, conclusory assertions or generalized statements instead of the required particularity are insufficient when fraud constitutes the gravamen of a claim (Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923-24 (7th Cir. 1992)).

Star Registry's Complaint includes two counts--Counts II and

8

III-- alleging fraud.[5] As discussed below, both of those counts must be dismissed for failure to state a claim with the particularity required by Rule 9(b).

Fraudulent Inducement

Star Registry alleges in its Count II that ABC Radio, through Lally, fraudulently induced it to enter into a contract year after year by falsely representing that ABC Radio would perform its contractual duties (Complaint ¶30). No specifics are included--only that conclusory assertion.

As thus framed, Star Registry premises its fraudulent inducement claim on a theory of promissory fraud. Historically Illinois courts have generally declined to recognize promissory fraud claims "because fraud is easy to allege and difficult to prove or disprove. Thus, the burden on a plaintiff claiming promissory fraud is deliberately high" (Bower v. Jones, 978 F.2d 1004, 1012 (7th Cir. 1992)(citation omitted)). But there is a narrow exception, under which "in order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent--a scheme or device" (id.)--an approach consistent with the mandates of Rule 9(b). That stringent pleading requirement serves the important goal of

---

[5] As discussed later, fraud is not an essential element of a claim under the Act, although it can trigger the Act's applicability if the other elements of Act-violative conduct are present.

9

deterring claimants with a straightforward breach of contract claim from "open[ing] the door to tort damages by alleging that the promises broken were never intended to be performed" (id.).

In terms of that "overall scheme" requirement, Desnick v. Am. Broad. Cos., 44 F.3d 1345, 1354 (7th Cir. 1995) has explained:

> Our best interpretation is that promissory fraud is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy.

By thus requiring a scheme or pattern of deceptions, courts advance the important policy of protecting defendants from spurious allegations of fraud.

Here Star Registry has not met the high burden marked out by that caselaw. It mentions only one objective manifestation: that Lally falsely represented that ABC Radio would run Star Registry's advertisements with a certain frequency (Complaint ¶33). That does not qualify under Desnick's "particularly egregious" test, nor is it "embedded in a larger pattern of deceptions or enticements that reasonably induces reliance"[6]--the other Desnick alternative.

Moreover, in violation of Rule 9(b)'s mandate, Star Registry

---

[6] As hereafter explained in the Fraudulent Concealment section, any purported reliance on Lally's representations during the five years preceding this lawsuit cannot be viewed as reasonable under Star Registry's skeletal allegations.

10

has neither provided any specific dates when Lally made those statements[7] nor any of the other specific requirements about the purported promises. Thus Complaint ¶29 simply (and vaguely) lists methods by which Lally made those promises--"in person, over the telephone, or through written correspondence"--without even approaching the detailed information called for by the standard first enunciated in <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir. 1990) and consistently reconfirmed by our Court of Appeals (though not in those precise terms) since then:

> This means the who, what, when, where, and how: the first paragraph of any newspaper story.

Star Registry also argues that "[s]urely ABC Radio is aware of those exact dates upon which [Star Registry] contracted for services each year" (<u>id</u>.). As a party to the contract, Star Registry must also be aware of the exact dates, and Rule 9(b) requires Star Registry, not ABC Radio, to plead with particularity. In sum, Star Registry's Count II, asserting promissory fraud, is dismissed.

<u>Fraudulent Concealment</u>

For a plaintiff to establish fraudulent concealment under Illinois law, it must prove (<u>Trustees of the AFTRA Health Fund v. Biondi</u>, 303 F.3d 765, 777 (7th Cir. 2002)):

---

[7] In fact, Star Registry admits that the Complaint has provided only "general time periods during which the representations or omissions occurred" (S. Mem. 4).

11

> (1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury.

Most importantly, plaintiffs must allege affirmative misconduct by defendants where there is no fiduciary duty (or any other relationship giving rise to a duty to speak)(Scherer v. Balkema, 840 F.2d 437, 441 (7th Cir. 1988)). Here both parties agree that ABC Radio did not owe a fiduciary duty to Star Registry, so that Star Registry must plead that ABC Radio did more than remain silent about its alleged failures to provide services as agreed upon in the contract.[8]

As above, Star Registry contends that it has met its burden of showing ABC Radio's affirmative acts by alleging that Lally "repeatedly promised and renewed its promise to provide [Star Registry] with advertising campaigns that it knew it would not, or could not, provide" (Complaint ¶33). And again Star Registry proffers no dates or any details about the specific context of Lally's statements--once more failing its Rule 9(b) requirements.

---

[8] Star Registry asserts that ABC Radio had a duty to report any underdeliveries of its advertisements to Star Registry (Complaint ¶31), but that unsupported ipse dixit conclusion does not pass muster--certainly not in the Rule 9(b) environment.

12

That failure alone would doom Star Registry's Count III as a pleading matter. But there are two additional basic flaws in its fraudulent concealment claim, either of which would independently knock it out of the box.

For one thing, Star Registry falls at the third hurdle: the requirement that it show it could not have discovered the truth through a reasonable inquiry or inspection many years before it actually launched any inquiry at all. Again what triggered this lawsuit is that Star Registry did ultimately request, more than two decades after the parties began doing business with each other--and it then received--the reports from ABC Radio as to the frequency with which its advertisements were run. Its failure to have requested and reviewed such reports for so many years negates any claimed inability to discover the alleged misconduct earlier, and hence it is also fatal to any fraudulent concealment claim.

Lastly, Star Registry cannot prove that its reliance on Lally's misrepresentations was reasonable. In that respect <u>Teamsters Local 282 Pension Trust Fund v. Angelos</u>, 839 F.2d 366, 370 (7th Cir. 1988)(internal quotation marks omitted)[9] states the test in this jurisdiction:

Indeed, the Illinois Supreme Court has said that the

---

[9] That opinion on appeal confirmed this Court's own reading of the Illinois caselaw in that case (649 F.Supp. 1242, 1249 (N.D. Ill. 1986)).

13

> question of whether the plaintiff had a right to rely
> on a false representation is to be answered while
> viewing the representation in the light of all the
> facts of which plaintiff had actual knowledge as well
> as those of which he might have availed himself by the
> exercise of ordinary prudence.

In the same vein, <u>Teamsters</u>, <u>id</u>. at 371 teaches that "Illinois law imposes on the plaintiff a duty to investigate when all the circumstances, evaluated in their totality, reasonably require, as a matter of prudence, that an investigation be undertaken."

What is at issue here was information that was critical to Star Registry's business, which was dependent on customer orders stemming from ABC Radio's ads. Would any responsible business content itself with a mere oral inquiry when the objective information was available on request? Star Registry has not shown--or even claimed--that ABC Radio blocked it from requesting the information at any time during the long relationship. In terms of the "totality of the circumstances" approach, Star Registry was not so unsophisticated or obstructed from inquiry that its asserted long-term reliance on ABC Radio's misrepresentations was reasonable. Star Registry's Count III, based on assertedly fraudulent concealment, succumbs as well.

<u>Illinois Uniform Deceptive Trade Practices Act</u>

Illinois' Act, codified at 815 ILCS 510 ("Section 510"), provides injunctive relief for a plaintiff who can demonstrate that a defendant engaged in any of the 12 enumerated types of

conduct listed in Section 510/2.[10]  Popp v. Cash Station, Inc, 244 Ill.App.3d 87, 98, 613 N.E.2d 1150, 1156 (1st Dist. 1992) has explained that the General Assembly enacted the statute to prohibit unfair competition--its focus "is primarily directed towards acts which unreasonably interfere with another's conduct of his business."  As such, the Act "was not intended to be a consumer protection statute" (id.).

Nevertheless the Illinois courts have held that a consumer action is sustainable under the Act if the consumer alleges all the requisite elements that would entitle it to injunctive relief, including "facts which would indicate that [it] is likely to be damaged in the future" (id., 613 N.E.2d at 1157).  As Popp, id. states, "[t]he problem in most consumer actions under the [Act] is the inability to allege facts indicating the likelihood of damage in the future" (id.).  In consumer actions, proving the likelihood of future harm is difficult because once the consumer has knowledge about the defendant's actions, it can easily protect itself in the future by avoiding the harm (id.).

---

[10]  ABC Radio contends that Star Registry's attempted reliance on the Act would be subject to the stringent pleading requirements of Rule 9(b).  Not necessarily so--because the Act does not require a showing of fraud, its invocation could be subject to the lesser demands of federal notice pleading under Rule 8(a) (see, e.g., Sotelo v. .DirectRevenue, LLC, 384 F.Supp.2d 1219, 1233 (N.D. Ill 2005)).  But to the extent that the conduct charged to ABC Radio and claimed as violative of the Act does partake of fraud, what has been said earlier in this opinion about Star Registry's failure to satisfy Rule 9(b) applies as well to Count IV.

Star Registry cannot show that it would be damaged in the future by ABC Radio's actions. It is now armed with the knowledge that it should monitor ABC Radio's advertising by reviewing the reports to ensure that ABC Radio is performing according to the contract terms. With that knowledge, Star Registry can avoid future harm by taking steps to protect itself--steps that it can accomplish without court intervention in the form of injunctive relief. So Count IV succumbs as well.

Tortious Interference With Business Relations

From the pleadings, it appears that Star Registry's Count V has confused the common law tort of tortious interference with business relations with that of tortious interference with prospective economic advantage. But for Rule 12(b)(6) purposes it does not matter whether Star Registry places any label--or even the wrong label--on the claim (NAACP, 978 F.2d at 292).

In this instance Star Registry asserts that it has proffered enough in the Complaint to support its charge of tortious interference with business relations. But to that end it cites a single Seventh Circuit case, Adams v. Catrambone, 359 F.3d 858, 865 (7th Cir. 2004), which actually discusses the elements for the different tort of tortious interference with prospective economic advantage. And Star Registry's arguments make it clear that it does seek to recover for interference with the potential for future contracts with prospective customers--the latter tort.

16

Though the caselaw itself is somewhat murky, the two torts are separate, though obviously related. Where a plaintiff can demonstrate that a defendant interfered with existing contractual rights, it can recover by establishing (Burrell v. City of Mattoon, 378 F.3d 642, 652 (7th Cir. 2004)):

> (1) a valid and enforceable contract; (2) defendants' awareness of the contractual obligation; (3) defendants' intentional and unjustified inducement of the breach; (4) subsequent breach caused by defendants' unlawful conduct; and (5) resultant damages.

But where a plaintiff's "economic expectancy has not yet solidified into a contractual relationship," recovery for tortious interference with prospective economic advantage is possible if plaintiff demonstrates (id.):

> (1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from being fulfilled; and (4) damages to the plaintiff resulting from such interference.

Upon analysis, Star Registry's Complaint is insufficient to support recovery for either tort.

First, because Star Registry does not allege that ABC Radio interfered with existing contracts between Star Registry and its customers, it cannot prevail on a claim that ABC tortiously interfered with its business relations. As enunciated in Burrell, a plaintiff must plead the existence of a valid and enforceable contract. It is not enough for Star Registry to

17

assert that it could have obtained contracts with potential customers if ABC Radio had fulfilled its obligations under the parties' contract. Any such theory is just not viable.

That is equally true of Star Registry's failure to plead the requisite elements of tortious interference with prospective economic advantage. Under Cook v. Winfrey, 141 F.3d 322, 328 (7th Cir. 1998) Star Registry is not required to "allege the specific third party or class of third parties with whom it claims to have had a valid business expectancy." It is, however, well established that the assertedly tortious interference allegedly committed by the defendant must "be 'directed toward' the third party or parties with whom the plaintiff had the business expectancy"--not simply toward the plaintiff (Fredrick v. Simmons Airlines, Inc., 144 F.3d 500, 503 (7th Cir. 1998)). Star Registry's assertion that ABC Radio's actions "affected" (S. Mem. 8) Star Registry's customers does not fill the bill.

Moreover, under Illinois law "[p]roof of tortious interference with prospective economic advantage requires, among other things, a showing that the tortfeasor acted with actual malice" (Capital Options Invs., Inc. v. Goldberg Bros. Commodities, Inc., 958 F.2d 186, 189 (7th Cir. 1992)). To establish malice under Illinois law Star Registry must prove that ABC Radio "acted with a desire to harm, which was unrelated to the interest [it] was presumably seeking to protect by bringing

about the contract breach" (id.). Star Registry's Complaint does not advance such a contention, so that alternative theory is equally unavailable.

## Conclusion

Star Registry has failed to state any claim other than that of breach of oral contract, which will be subject to the five-year statute of limitations period. ABC Radio's motion to dismiss is granted in all other respects.

That being the case, Star Registry is ordered to file an appropriately slimmed down Amended Complaint on or before September 25, 2006, and ABC Radio is ordered to file an answer within 14 days after receipt of that revised pleading. This action is set for a status hearing at 9 a.m. October 13, 2006.

_____
Milton I. Shadur
Senior United States District Judge

Date: September 18, 2006